IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR314 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| RAYSHAWN D. LIGON, | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Danielle K. Angeli and Patrick P. Burke, Assistant United States Attorneys, and hereby submits the following trial brief.

**I.      Statement of Relevant Facts**

On March 4, 2011, Defendant pled guilty to conspiracy to distribute heroin, in Case Number 1:11CR12, in the Northern District of Ohio.  While finishing his 100-month sentence at a halfway house in Cleveland, Ohio, Defendant actively participated in a drug-trafficking conspiracy and attempted to distribute over 600 grams of fentanyl, a Schedule II controlled substance.

Specifically, in early December 2018, Defendant communicated with a federal inmate who brokers relationships with drug suppliers.  During this time, Defendant sent and received messages from this broker discussing drug color, strength, amounts, and costs, and coordinated drug shipments to 7308 Bessemer Avenue in Cleveland, Ohio.  From December 2018 through February 2019, eight packages were sent from the Modesto, California area to this address, most of which bore similar packaging, weight, and handwriting as the packages charged in Counts 2

and 3 (Attempt to Possess with Intent to Distribute Fentanyl). These packages also correspond with the arrangements between Defendant and the drug broker via prison messages. Additionally, on January 7, 2019, Defendant spoke with the drug broker via telephone and discussed drug shipments and amounts.

On February 22, 2019, a package weighing approximately 18 ounces from Modesto, California, was sent to 7308 Bessemer in Cleveland, Ohio. The United States Postal Service ("USPS") intercepted the package, obtained a search warrant, and discovered that the package contained 332.18 grams of blue fentanyl pills marked as oxycodone.

On February 28, 2019, the USPS again intercepted a package, weighing 14.25 ounces from Modesto, California, which contained 331.10 grams of blue fentanyl pills marked as oxycodone. The USPS set up a controlled delivery, and an undercover postal inspector delivered the package as expected. On March 1, 2019, Defendant arrived at the address, picked up the package, and drove to a home in Euclid, Ohio. While inside the home, Defendant opened the package, realizing that it no longer contained the fentanyl pills, and left the home with the opened package. As Defendant left the home, postal inspectors attempted to stop Defendant's car. Instead, Defendant led officers on a high-speed chase, and threw the package out of the window. Defendant lost control of the car and crashed in the yard of a nearby home, fleeing on foot. Inside the car, officers found the Defendant's coat, wallet, birth certificate, car insurance, and cell phones, including a cell phone with the same number used to communicate with the inmate broker in December 2018 and January 2019.

On April 12, 2019, Defendant was arrested in Wheeling, West Virginia. Officers seized 12 blue oxycodone pills containing suspected fentanyl, approximately 25 grams of crack cocaine, 10

2

grams of cocaine base, 3 grams of heroin, and 8 grams of marijuana, from Defendant. They also seized $1,059 in cash and a cell phone.

## II.     Controlling Law

Defendant is charged in a four-count Superseding Indictment with Drug-trafficking Conspiracy, Attempt to Possess with Intent to Distribute Fentanyl, and Escape. The first count charges Defendant with Conspiracy to Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 846. The elements for a drug conspiracy are: (1) two or more persons conspired or agreed to possess with intent to distribute a controlled substance, and (2) the defendant knowingly and voluntarily joined the conspiracy. *See* Pattern Crim. Jury Instr. 6th Cir. 14.05.

Defendant is also charged with two counts of Attempt to Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B), and 846. The elements for these counts are: (1) the defendant intended to commit the crime of Possession with Intent to Distribute Fentanyl, and (2) the defendant did some overt act that was a substantial step towards committing the crime of Possession with Intent to Distribute Fentanyl. *See* Pattern Crim. Jury Instr. 6th Cir. 5.01.

Finally, Defendant is charged with Escape, in violation of 18 U.S.C. § 751(a). The elements for escape are: (1) the defendant was in the custody of the Attorney General, or was confined in an institution where he was confined by the direction of the Attorney General, (2) as a result of a conviction under the laws of the United States, and (3) the defendant escaped from that custody. *See United States v. Bailey*, 444 U.S. 394, 407-13 (1980) (listing elements of § 751(a)); *United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971) (holding that an individual at a treatment center was "in custody" under the purview of § 751 because the treatment center's restrictions deprived the defendant of freedom of movement and association).

### III. Potential Evidentiary Issues

#### A. Admissibility of Recorded Jail Call and Transcript

The United States intends to introduce an audio recording of a telephone conversation between Defendant and a co-conspirator obtained through the Bureau of Prison's recorded telephone system. A synched transcript will be offered as a jury aid while the call is played. The United States may also seek to admit the transcript as an exhibit for the jury.[1] Recorded calls and transcripts are admissible when the tapes are "audible and sufficiently comprehensible for the jury to consider the contents." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). A district court abuses its discretion only "where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy." *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984).

Additionally, such recordings are subject to the Federal Rules of Evidence generally. The Sixth Circuit has noted that, although it has not "indicated precisely what foundation is necessary to admit audiotapes where the challenge is to their admission generally," several other circuits have held that a district court must be satisfied that the recording is "'accurate, authentic, and generally trustworthy[,]'" *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (quoting *United States v. Panaro*, 266 F.3d 939, 951 (9th Cir. 2001) (citations omitted)), and there must be "'proof that the tape recording accurately reflects the conversation in question,'" *id.* (quoting *United States v. Doyon*, 194 F.3d 207, 212 (1st Cir. 1999)). There are at least two

---

[1] Even absent a stipulation by the parties, the Sixth Circuit has repeatedly affirmed the validity of this procedure as long as there is a preliminary foundation as to the preparation and accuracy of the transcripts, *United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991), even more so when a cautionary instruction reminds the jury that the tape recording, and not the transcript, is the evidence that it should consider. *See* Pattern Crim. Jury Instr. 6th Cir. 7.17. The parties will submit joint proposed jury instructions with this instruction.

4

ways in which a proper foundation may be established: "'a chain of custody… or alternatively, other testimony could be used to establish the accuracy and trustworthiness of the evidence.'" *Id.* (quoting *United States v. Rivera*, 153 F.3d 809, 812 (7th Cir. 1998)).

During trial, the United States will introduce testimony from a reviewing agent who has compared the transcript with the recorded conversation. The agent will testify that the transcript is a fair and accurate transcription of the conversation. This testimony will establish the accuracy and trustworthiness of the recording. Further, the United States requests that the Court instruct the jury using the Sixth Circuit's Pattern Jury Instruction 7.17. Thus, with foundation as to its accuracy, the recorded call is properly admissible.

### B. A Justification Instruction is Improper.

Defendant has indicated to the government that he will request a justification instruction relating to the escape count using the Sixth Circuit's Pattern Jury Instruction 6.07.[2] The instruction provides:

> (1) One of the questions in this case is whether the defendant was justified in committing the crime. Here, unlike the other matters I have discussed with you, the defendant has the burden of proof.
>
> (2) For you to return a verdict of not guilty because of a justification defense, the defendant must prove the following five factors by a preponderance of the evidence:
>
>> (A) First, that the defendant reasonably believed there was a present, imminent, and impending threat of death or serious bodily injury [to himself] [to another];
>>
>> (B) Second, that the defendant had not recklessly or negligently placed himself [another] in a situation in which

---

[2] Defendant has not filed a motion setting forth his argument for the instruction, so the United States is responding as best it can anticipate but requests the opportunity to respond further should Defendant file such a motion.

5

> it was probable that he would be forced to choose the criminal conduct;
>
> (C) Third, that the defendant had no reasonable, legal alternative to violating the law;
>
> (D) Fourth, that the defendant reasonably believed his criminal conduct would avoid the threatened harm; and
>
> (E) Fifth, that the defendant did not maintain the illegal conduct any longer than absolutely necessary.
>
> (3) If the defendant proves by a preponderance of the evidence the five elements listed above, then you must find the defendant not guilty.
>
> (4) Preponderance of the evidence is defined as "more likely than not." In other words, the defendant must convince you that the five factors are more likely true than not true.

Pattern Crim. Jury Instr. 6th Cir. 6.07. This instruction is improper because it does not relate to the charges alleged in the Superseding Indictment and Defendant cannot demonstrate any of the required elements.

The pattern instruction's commentary notes that the cases relied upon to create the instruction "are all firearms possession cases, so the question arises whether the justification defense exists outside this context." Pattern Crim. Jury Instr. 6th Cir. 6.07 (cmt.). Indeed, even in firearms cases, the Sixth Circuit has noted that the defense is appropriate only in "rare situations[,] . . . should be construed very narrowly[,] . . . [and must not go to the jury] if the evidence could not support a verdict based on it." *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990) (citations omitted).

Here, Defendant faces drug-trafficking and escape charges. These are not firearms charges. The Sixth Circuit has not affirmed the use of a justification instruction outside of such a case. *See id.* (holding that justification for a felon-in-possession-of-a-firearm case may arise in rare situations) (citations omitted); *cf. Bailey*, 444 U.S. at 415 ("An escapee who flees from a jail

6

that is in the process of burning to the ground may well be entitled to an instruction on duress or necessity, for he is not to be hanged because he would not stay to be burnt.") (internal citation and quotation omitted). Thus, the instruction is unsuitable to the charges here.

Relatedly, Defendant cannot satisfy any of the required elements. Before instructing the jury, Defendant must make a *prima facie* showing of each element. *United States v. Ridner*, 512 F.3d 846, 849-50 (6th Cir. 2008) (quoting *United States v. Johnson*, 416 F.3d 464, 467-68 (6th Cir. 2005)). Defendant has indicated that he requests this instruction only for the escape charge, however, the facts underlying that count fail to satisfy any of the five elements. Defendant was placed on escape status after he fled from law enforcement during the controlled delivery and failed to return to Oriana House. But Defendant fled only *after* discovering that the parcel did not contain the blue fentanyl pills and *after* officers attempted to stop his car. He faced no present, imminent, and impending threat of death or serious bodily injury—he fled to avoid being arrested for drug trafficking. He placed himself in that situation, and had reasonable, legal alternatives to escaping from custody. Defendant also cannot show that he reasonably believed that his criminal conduct would avoid a threatened harm. Finally, he cannot show that he did not maintain the illegal conduct any longer than absolutely necessary because he was arrested over a month later in West Virginia with several different types of drugs, a large amount of cash, and a cell phone. Therefore, on these facts, the instruction is improper and should not be given to the jury.

## III. Motion in Limine

The United States anticipates introducing evidence that is inextricably intertwined or otherwise *res gestae* background evidence essential for the jury to understand the underlying events. The United States previously submitted its motion in limine with respect to this proposed

7

*res gestae* evidence, or alternatively, other-acts evidence under Federal Rule of Evidence 404(b), which is fully incorporated by reference herein.  *See* (R. 32: Notice, PageID 114-28).

Defendant also filed a motion in limine and motion to suppress.  (R. 44: Motion, PageID 171-77).  The United States will timely respond in opposition in a separate filing.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Danielle K. Angeli
Danielle K. Angeli (MI: P81362)
Patrick P. Burke (OH: 0082609)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3875 / (216) 622-3689
(216) 522-8355 (facsimile)
Danielle.Angeli@usdoj.gov
Patrick.Burke@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 17th day of October 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Danielle K. Angeli
    Danielle K. Angeli
    Assistant U.S. Attorney