IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:19CR314-JRA-1 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge John R. Adams |
| | : | |
| RAYSHAWN D. LIGON, | : | |
| | : | SENTENCING MEMORANDUM |
| Defendant. | : | |

This matter came before the Court for a sentencing hearing on January 29, 2020. After considering the arguments of counsel regarding Defendant's objections to the Presentence Investigation Report (PSI) (attached hereto), The Court set Defendant's offense level at 32, Criminal History Category IV, which provides for a guideline sentence of 168 to 210 months. Counsel posed three objections to the PSI at the hearing and in a sentencing memorandum (Doc. 73), including paragraph 93 (and 94) of the PSI, which set the statutory penalty at 25 years (300 months to life pursuant to 21 U.S.C. § 841(b)(11)(A) and 851. The Court overruled the objections on the record, and stated that the statutory enhancement would apply. The Court then provided notice of a possible upward variance to counsel and stated that the Court would consider imposing a life sentence. After hearing argument from counsel, the Court ordered a recess of the hearing and asked that the parties brief the issue of whether a life sentence was appropriate in this case due to Defendant's criminal history, his characteristics, and the nature of the case. The Court took the matter under advisement. This written opinion follows to address Defendant's objections to the PSI and to set forth the Court's reasons for an upward variance in imposing sentence of 360

months, 10 years supervision, which were also provided on the record on March 3, 2020 .

## I.    **Case Background**

Defendant Rayshawn D. Ligon was convicted by a jury on November 1, 2019 on four counts of a superseding indictment.   The jury found him guilty of the following:

- Count I: Conspiracy to Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and 846, with the amount of the mixture or substance containing a detectable amount of fentanyl involved in the conspiracy as a whole being 400 grams or more;

- Count II: Attempt to Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B), with the amount of the mixture or substance containing a detectable amount of fentanyl involved being 40 grams or more; and

- Count III:   Attempt to Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B), with the amount of the mixture or substance containing a detectable amount of fentanyl involved being 40 grams or more.

- Count IV: Escape, in violation of 18 U.S.C. §751(a).

(Doc. 67.)

With respect to Counts I through III, the jury additionally found that Ligon had a prior conviction in Case Number 1:05CR128 for which he served a term of imprisonment of more than 12 months, and for which he was released from custody on October 2, 2009, which is within 15 years of the commission of the instant offenses.   (*Id.*)

Also with respect to Counts I through III of the superseding indictment, the jury found that Ligon had a prior conviction in Case Number 1:11CR12 for which he served a term of imprisonment of more than 12 months, and for which he was still serving a term of imprisonment, which is within 15 years of the commission of the instant offenses.

The underlying offense conduct is set forth in the PSI. It is summarized as follows.

On February 22, 2019, Office of Inspector General (OIG) agents in Cleveland, Ohio identified a United States Postal Service (USPS) priority mail parcel believed to contain narcotics. The parcel was addressed to what was determined to be Ligon's place of employment. A search warrant executed on the parcel revealed that it contained 332.18 grams of fentanyl. (Doc. 71, ¶ 12.)

Also in February 2019, OIC agents took custody of another parcel delivered to an address on East 78th Street in Cleveland. A search warrant executed on the parcel revealed that it contained 331.10 grams of fentanyl. (Doc. 71, ¶ 14.)

OIG agents observed Ligon arriving at the East 78th Street residence and leaving with the parcel. Global position system (GPS) data for the parcel indicated that the parcel remained in Ligon's vehicle while he made several stops in Cleveland and Euclid, Ohio. Ligon eventually drove to a residence in Euclid. He entered the residence with the parcel and exited carrying the opened parcel.

OIG activated their red and blue police lights and attempted to conduct a traffic stop on the defendant. Ligon drove around the agent's vehicle at a high rate of speed and threw the parcel out of the vehicle's window. Shortly thereafter, Ligon lost control of the vehicle and drove through a residential lawn, running over a real estate sign. He then abandoned the vehicle and ran away on foot. Investigators were unable to locate the defendant, but later recovered the parcel. While conducting an inventory search of the vehicle, investigators recovered Ligon's Ohio driver's license and his birth certificate, among other items. (Doc. 71, ¶¶ 15-17.)

Ligon was an inmate of the Federal Correctional Institute McKean in Docket No. 1:11CR12 at the time of his conduct in the instant case, and he was housed at the Oriana House

Residential Reentry Center (Oriana House) located at 1829 East 55th Street in Cleveland, Ohio 44193.   (Doc. 71, ¶ 17.)

Ligon was arrested on April 22, 2019 in Wheeling, West Virginia during a traffic stop.   Mr. Ligon is attributed with a total of 663.28 grams of fentanyl throughout his course of conduct underlying the drug offenses.   (Doc. 71, ¶ 18.)

## II.    <u>Sentencing Procedure</u>

Often, criminal sentencing is described as a three-step process. The first step is calculating the advisory sentence guideline range suggested by the United States Sentencing Commission. *See Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines.").   In so doing, a court must determine the offense level for the crimes for which the defendant has been convicted and determine the defendant's criminal history category.   *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

Second, the court must determine whether a variance or departure from the advisory sentence guideline range would be appropriate. *See United States v. Collington*, 461 F.3d 805, 807-09 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant.   A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply.   In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D. Ohio 2008) (citations and quotations omitted).

A.     **Offense Level Computation**

The Court uses the 2018 edition of the United States Sentencing Commissions Guidelines Manual to determine the Offense Level Computation in this case.

Counts I, II, and III are grouped for guideline calculation purposes because the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. U.S.S.G § 3D1.2(d).   Count IV is not grouped with Counts I, II, and III of the superseding indictment, as different societal interests were harmed through Defendant's Escape.

The provisions of U.S.S.G. § 3D1.4 are used to determine the combined offense level. Pursuant to Application Note #2, the procedure for calculating the combined offense level when there is more than one group of closely related counts is as follows: (1) identify the offense level applicable to the most serious group and assign it one unit; (2) determine the number of units that the remaining groups represent; and (3) increase the offense level of the most serious group by the number of levels indicated in the table corresponding to the total number of units.

1.     **Count Group 1**

Count Group 1 in this case consists of Conspiracy to Possess with Intent to Distribute Fentanyl.   With regard to calculation of the base offense level for Count Group 1, the guideline for a 21 U.S.C. § 841 offense is found in U.S.S.G. § 2D1.1, which addresses drug related offenses.   According to U.S.S.G. § 2D1.1(a)(5), the base offense level shall be derived from the Drug Quantity Table set forth in subsection (c), relative to the quantity of narcotics attributable to

the defendant.    The instant offense involved 663.28 grams of fentanyl.    Since the amount is at least 400 grams but not more than 1.2 kilograms, the base offense level is 30, pursuant to U.S.S.G § 2D1.1(c)(5).

In the PSI, the United States Probation Office recommended a two-level increase to the base level offense for Count Group 1 for obstruction of justice.    The recommendation is well-taken.    Ligon recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, resulting in the two-level increase pursuant to U.S.S.G § 3C1.2.    Ligon's conduct on March 1, 2019, discussed above, involved fleeing from a traffic stop by driving around the agent's vehicle at a high rate of speed and throwing the parcel containing fentanyl out of the vehicle's window.    Ligon then lost control of the vehicle, drove through a lawn, and ran over a real estate sign.    After abandoning the vehicle, Ligon fled on foot.    There can be no debate that his conduct created a substantial risk of death or serious bodily injury to officers and the other travelers on the highway as he fled.    Accordingly, the adjusted offense level for Count Group 1 is 32.    (Doc. 71, ¶¶ 20, 29.)

### 2.    Count Group 2

Count Group 2 consists of the Escape charge.    With respect to calculation of the base offense level, the guideline for a violation of 18 U.S.C. §751(a) is U.S.S.G. §2P1.1.    The base offense level is 13 if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense.    On or about March 2, 2019, the defendant escaped from the custody of Oriana House Residential Reentry Center, while in custody as an inmate at Federal Correctional Institute McKean, an institutional facility in which he was lawfully confined at the direction of the Attorney General by virtue of a judgment and commitment of the United States District Court for the Northern District of Ohio, upon a previous conviction for Conspiracy to

Distribute Heroin.   No other adjustments apply.   Therefore, pursuant to U.S.S.G. § 2P1.1(a)(1), the adjusted offense level is 13.   (Doc. 71, ¶ 31.)

### 3.   Combined Offense Level

The greater of the adjusted offense levels for Count Group 1 and 2 is 32.   No unit increase is warranted pursuant to the table at U.S.S.G § 3D1.4.   Accordingly, the combined adjusted offense level is 32.   (Doc. 71, ¶ 39.)

### 4.   Adjusted Offense Level

In this case, there is no basis for a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.   Ligon has not clearly demonstrated acceptance of responsibility for his conduct.   Ligon went to trial and denied the essential factual elements of guilt in this case.   The defendant was interviewed by videoconference on November 20, 2019, while he was incarcerated at the Northeast Ohio Correctional Center.   Defense counsel was notified of the date and time of the interview, but was not able to be present.   Ligon stated that he did not commit the instant offenses, and plans to appeal the jury verdicts.   Accordingly, the applicable total offense level is 32.  (Doc. 71, ¶ 41.)

### B.   Criminal History Computation

As discussed at the initial phase of sentencing on January 29, 2020, Mr. Ligon possesses one of the most extensive and unrelenting criminal histories this Court has encountered.   The full details of this history are contained in the attached PSI, and are briefly summarized here.   (Doc. 71, ¶¶ 43-70.)

Defendant's criminal history as a juvenile dates back to at age 9.   As a juvenile, he was convicted of at least one offense under state law at ages 9 (multiple offenses), 10, 12 (multiple), 13, 14 (multiple), 15 (multiple), and 17 (multiple).   These offenses include: Burglary; Possession

of a Deadly Weapon; Receiving Stolen Property; Theft; Assault; Drug Abuse; Possession of

Tools; Having a Weapon under Disability; Attempted Drug Abuse; Attempted Drug Trafficking;

Attempted Receiving Stolen Property; Possession of Marijuana; and Possession of Drugs.

As an adult, Ligon has multiple state court convictions dating from age 18 through age 29.

They include: Possession of Drugs (F4); Possession of Drugs (F5) (multiple convictions);

Preparation of Drugs for Sale (F5) (multiple); Public Gambling; Disorderly Conduct;

Driving without a Valid Driver's License (multiple); and Trafficking in Heroin (F5).

Further, in federal case 1:05CR128, Defendant was sentenced on October 17, 2005 for

Possession with Intent to Distribute Heroin.   He was sentenced to 46 months incarceration and

three years supervised release.   Defendant violated his supervised release for failure to abide by

the standard conditions.   Specifically, he was non-compliant with drug testing, was admonished,

and continued with his non-compliance with this condition of release.   On September 7, 2010, a

violation report was submitted to the Court charging Defendant with several violations, including

two law violations.   On January 25, 2012, Ligon was sentenced to 24 months incarceration to run

consecutively to Docket No.: 1:11CR12.   (Doc. 71, ¶ 68.)   Three points are scored for this

conviction.   U.S.S.G. § 4A1.1(a).

According to records from the Bureau of Prisons (BOP), Ligon completed multiple

education courses while incarcerated.   BOP records also indicate that Ligon violated a total of 25

institutional rules, which are detailed in the Court's discussion in Section III.B below.

Additionally, on September 21, 2010, Ligon was convicted in the Cleveland, Ohio

Municipal Court of Physical Control While Under the Influence.   He was sentenced to 30 days

incarceration.   (Doc. 71, ¶ 69.)   One point is scored for this offense.   U.S.S.G. § 4A1.1(a).

On January 25, 2012, Ligon was convicted in federal case 1:11CR12 on two counts -

Conspiracy to Distribute Heroin and Conspiracy to Launder Money. On the conspiracy to distribute conviction, he was sentenced to 140 months incarceration and five years supervised release. On the conspiracy to launder money conviction, he was sentenced to 120 months incarceration and three years supervised release. The sentences to were to be served concurrently and 24 months consecutive to Docket No.: 1:05CR128. On July 20, 2015, Defendant received an amended sentence of 100 months incarceration on both counts (to be served concurrently) and consecutive to 24 months in 1:05CR128. He was admitted to Oriana House for pre-release on February 16, 2018, when he failed to return and was arrested in the instant matter. (Doc. 71, ¶ 69.) A total of three points are scored for this offense. U.S.S.G. § 4A1.1(a).

The criminal convictions above result in a subtotal criminal history score of seven. Ligon committed the instant offense while under a criminal justice sentencing. He was in the custody of Oriana House, while in custody as an inmate at Federal Correctional Institute McKean, upon a previous conviction for Conspiracy to Distribute Heroin. (Doc. 71, ¶ 72.) Therefore, two points are added. U.S.S.G. § 4A1.1(d).

The total criminal history score is nine. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of nine establishes a criminal history category of IV. Thus, the Court sets Defendant's offense level at 32, Criminal History Category IV, which provides for a guideline sentence of 168 to 210 months. (Doc. 71, ¶ 73.)

**C.** **Section 851 Enhancements**

Prior to sentencing, the Government filed an Amended Notice of Prior Conviction Enhancement (Doc. 31) pursuant to 21 U.S.C. §§841(b)(1)(A), 841(b)(1)(B), and 851, giving notice that upon an adjudication of guilt in Counts I, II, or III of the indictment, it would rely upon the previous serious felony convictions of Defendant for purposes of invoking the increased

sentencing provisions of 21 U.S.C. § 841(b) of the United States Code (herein referred to as the Section 851 enhancements).   More specifically, the Government noticed that it would rely on the following serious drug felonies:

> [Defendant] had a final conviction for a serious drug felony, namely a conviction under Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846, for Possession with Intent to Distribute Heroin, in Case Number 1:05-CR-8-DAP-5, in United States District Court for the Northern District of Ohio, on or about October 21, 2005, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense; and a conviction under Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846, for Conspiracy to Distribute Heroin, in Case Number 1:11-CR-12-SL-1, United States District Court for the Northern District of Ohio on or about January 24, 2012, for which he served more than 12 months of imprisonment and for which he was not released from serving any term of imprisonment related to that offense more than 15 years from the commencement of the instant offense.

Based on these prior convictions, the United States alleged that Defendant has been convicted of two prior serious drug felony offenses.   (Doc. 31.)   The penalty enhancement provisions of 21 U.S.C. §§ 841(b)(1)(A) and 851 require, among other things, that the defendant shall be sentenced to a term of imprisonment which may not be less than 25 years (300 months) and not more than life upon Defendant's conviction of two prior felony offenses in Count I. Further, the penalty enhancement provisions of 21 U.S.C. §§ 841(b)(1)(B) require, among other things that Defendant shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life upon Defendant's conviction of a prior serious drug felony offense in Counts II or III of the instant case.   (Doc. 31; *see also* Doc. 71, ¶ 94.)

### D.     Objections to Guideline Calculations and 851 Enhancements

In his sentencing memorandum and at the initial sentencing hearing, Defendant raised

certain objections to the Court's calculation of the guideline sentence and to the application of the Section 851 enhancements. The Court addresses the objections as follows.

First, Defendant maintains that he does not have two predicate offenses which are required to enhance his sentence under §§ 841 and 851. Defendant argues that his convictions in Case Number 1:11CR12 and in Case Number 1:05CR128 (as set forth in paragraphs 70 and 68 of the PSI, respectively) do not qualify as predicates. (Doc. 73, pp. 1-3.)

With respect to the conviction in paragraph 70 of the PSI, Defendant's argument centers around the definition of "serious drug felony" as defined in 21 U.S.C. § 802. That section defines a "serious drug felony" as "an offense described in section 942(e)(2) of Title 18 for which (A) an offender served a term of imprisonment for more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." Defendant argues that a conviction for "conspiracy" to distribute heroin is not a Controlled Substances Act conviction, and therefore cannot qualify as a "serious drug felony" predicate for the Section 851 enhancements. The Court disagrees.

Under 18 U.S.C. §924(e)(2)(A), a "serious drug felony" is an offense under the Controlled Substances Act, 21 U.S.C. §801 *et seq*. Under 21 U.S.C. § 846, an offense under the Controlled Substances Act, "Any person who attempts or conspires to commit an offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Ligon pled guilty to Conspiracy to Distribute Heroin under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B), which therefore falls under the Controlled Substances Act. In addition, he served more than 12 months for that conviction, and the sentence was within 15 years of the instant offense. Therefore, the prior conviction for Conspiracy to Distribute Heroin in paragraph 70 is a predicate for the

purposes of 21 U.S.C. § 851.   As the Government has indicated, that while there has been some argument that, post habeas, the federal conspiracy statute does not trigger the predicates for a career offender, it clearly applies under § 851 as a serious drug felony under the facts here.   For these reasons, Defendant's objection that the conviction outlined in paragraph 70 of the PSI does not qualify as a predicate for the Section 851 enhancements is overruled.

Regarding the second predicate offense which the PSI indicates is applicable in paragraph 68, Defendant also contends that this conviction does not constitute a predicate.   In that case, Defendant pled guilty to Possession with Intent to Distribute between 20 and 40 grams of heroin, and was sentenced to 24 months in prison.   He feels that because he was only sentenced to a term of 24 months, this conviction cannot serve as a predicate to a Section 851 enhancement. This argument is not-well taken.

Mr. Ligon's plea was to Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   It is considered a "serious drug felony" for purposes of 21 U.S.C. §§ 851, because it is an offense prohibited by 18 U.S.C. § 924(e)(2)(A) for which the defendant served a term of imprisonment for more than 12 months and was released from any term of imprisonment within 15 years of the instant offense.   Accordingly, Defendant's objection that the conviction outlined in paragraph 68 of the PSI does not qualify as a predicate for a Section 851 enhancement is overruled.

Defendant's next objection is for purported "double counting."   Specifically, Defendant objects to paragraph 29 of the PSI, which increased the offense level for Count Group 1 by two levels for Obstruction of Justice under U.S.S.G. § 3C1.2.   (Doc. 73, p. 3.)   Ligon feels that because he was already charged with Escape from Oriana House, this is double counting.   He contends that if the Court does not apply the two-level increase, Ligon's Total Offense Level

would then be 28, Criminal History IV, with a guideline range of 110 to 137 months (which includes no Section 851 enhancement).

Ligon's double counting objection is overruled.   The Escape charge in the superseding indictment and the Obstruction of Justice are based on two separate events.   The Escape charge was based on Defendant's failure to return to the halfway house.   (Doc. 28, ¶ 8.)   The two level increase for Obstruction was applied for Defendant's conduct in fleeing from a law enforcement officer during an attempted traffic stop.   Dash camera video from the trial of this matter shows that Ligon drove around the OIG agent's vehicle at high speed into oncoming traffic, lost control of the vehicle, drove through a lawn, and ran over a real estate sign before fleeing.   Ligon's conduct created a substantial risk of death or serious bodily injury to officers and other travelers on the highway as he fled.   Thus, the Escape and Obstruction are based on two separate and distinct incidents, and do not constitute double counting.

Defendant's third objection is to paragraph 25 of the PSI and the Court's calculation of a base offense level of 30 based on Defendant having possessed 663.68 grams of fentanyl. Defendant concedes that the relevant statute only requires a "detectible amount" of the substance, and that a purity analysis is not required.   His objection is based solely on the purported vagueness of the term "detectible amount."   Defendant does not offer any caselaw to support his position.   (Doc. 73, pp. 3-4.)

This objection lacks merit.   Indeed, the relevant statute only requires a "detectable amount" of the drugs introduced into evidence.   The jury in this matter found, based on the testimony and evidence at trial, that the quantity of drugs met a weight threshold of 400 grams or more.   (Doc. 67.)   Since the amount is at least 400 grams but not more than 1.2 kilograms, the base offense level is 30, pursuant to U.S.S.G. §2D1.1(c)(5), and the PSI is correct.

For the forgoing reasons, Defendant's objections to the PSI and application of the Section 851 enhancements are overruled.

The Court finds that the 851 enhancements apply in this matter. Thus, the penalty enhancement provisions of 21 U.S.C. §§ 841(b)(1)(A) and 851 provide that the defendant shall be sentenced to a term of imprisonment which may not be less than 25 years (300 months) and not more than life upon Defendant's conviction of two prior felony offenses in Count I Under Counts II and III, the minimum term of imprisonment is 10 years, and the maximum is life. 21 U.S.C. §§ 841(b)(1)(B) and 851. The Court now turns to whether an upward variance would be appropriate in this matter.

III.    **Variance Analysis**

At the January 20, 2019 sentencing hearing for Ligon, this Court gave notice to the parties of a possible upward variance. Consistent with 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," this Court considered the following information in evaluating each of the factors in 18 U.S.C. § 3553(a).

The final step in determining a defendant's sentence is to apply the factors in 18 U.S.C. § 3553(a). When the Court has determined that an upward variance is appropriate, how much to vary upward also requires consideration of the § 3553(a) factors. *See United States v. Papakee*, 573 F.3d 569, 576-77 (8th Cir. 2009) (the question is whether the § 3553(a) factors, as a whole, justify the extent of a variance).

The § 3553(a) factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed,

including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, § 3553(a)(2)(A); to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B); to protect the public from further crimes of the defendant, § 3553(a)(2)(C); to provide the defendant with needed education or vocational training or other care in treatment, § 3553(a)(2)(D); the kinds of sentences available, § 3553(a)(3); the kinds of sentence and the sentencing range established for similar offenses, § 3553(a)(2)(A), § 3553(a)(4); any pertinent policy statement, § 3553(a)(5); the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(2)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(2)(A). In considering the § 3553(a) factors, a district court is not required to recite each of the sentencing factors therein, as long as the record is sufficiently clear that they were considered. *See Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2468-69, 168 L.Ed.2d 203 (2007). Herein, the Court considers all of the relevant factors, with the following discussion.

**A.       Nature and Circumstances of the Offense**

The offense conduct in this matter is summarized above, and is set forth in detail in the PSI. The Court will not reiterate it in great detail here. Ligon is attributed with a total of 663.28 grams of the deadly opiate fentanyl throughout his course of conduct underlying the drug offenses. The instant drug offenses were committed during an escape from Oriana House, while he was custody as an inmate at Federal Correctional Institute McKean, in which he was confined by virtue of a previous conviction in the United States District Court for the Northern District Ohio for Conspiracy to Distribute Heroin in violation of 18 U.S.C. § 751(a).

**B.       History and Characteristics of the Defendant**

Ligon's previous criminal history, as summarized above, and set forth in detail in the PSI,

is remarkable and disturbing in its extent and severity. The Court has rarely seen a criminal history so extensive and serious. This defendant consistently committed crimes whenever he could from a very young age throughout the time of the instant offenses. Moreover, he has continued to repeatedly engage in many of the same types of criminal activity that served the basis for previous arrests and incarcerations, and, in particular, dangerous drug activity.

As discussed, Ligon's juvenile history began at age 9 and continued through age 17 with a litany of serious offenses including Burglary, Receiving Stolen Property, Theft, Attempted Receiving Stolen Property, and Receiving Stolen Property. At age 9 he was placed on probation for possession of a deadly weapon for being in possession of an eight-inch knife on a school bus. At age 12 he committed assault. At age 14 he was in possession of a loaded blue steel revolver and arrested for having a weapon under disability.

Ligon's drug activity began at age 13 with charges of Drug Abuse and Possession of Tools. Ligon was in possession of .38 grams of cocaine. At age 14 he was in possession of .48 grams of cocaine and was arrested. At age 17 he was arrested and admitted to the Ohio Department of Youth Services for possession of 14.19 grams of marijuana.

Ligon's adult convictions, including numerous convictions for drug activity, began at age 18. Defendant also has other arrests, but not convictions, for: Grand Theft Motor Vehicle; Aggravated Murder; Possession of Drugs/Trafficking in Drugs with School Yard Specifications/Possession of Criminal Tools; and Aggravated trafficking. Ligon's state court drug convictions are as follows:

| ARREST | CONDUCT/SENTENCING/DISPOSITION |
|---|---|
| **12/13/1998**<br>**(Age 18)** | **Defendant had 1.47 grams of cocaine in his shoe.**<br><br>Possession of Drugs (F4)/ Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-99-3780045; 3/16/2000: Sentenced to 6 months incarceration to run concurrently with Docket No.: CR379246; 03/20/2001: Released. |
| **03/24/1999**<br>**(Age 18)** | **Defendant was observed engaging in drug activity and was arrested after a short chase in possession of .75 grams of cocaine.**<br><br>Possession of Drugs (F5)/ Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-99-379246; 3/16/2000: 6 months incarceration to be served concurrently with Docket No.: CR378045; 03/20/2001: Released. |
| **02/14/2000**<br>**(Age 19)** | **Defendant was arrested in preparation of distributing 1 gram or less of heroin.**<br><br>Possession of Drugs (F5), Preparation of Drugs for Sale (F5)/Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-00-395416; 09/27/2000: Counts 1 and 2: 6 months incarceration to run concurrently with each other. |
| **06/20/2000**<br>**(Age 20)** | **Defendant was arrested in preparation of distributing 1 gram or less of heroin.**<br><br>Preparation of Drugs for Sale (F5)/Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-00-391859; 7/06/2000: 6 months incarceration. |

| | |
|---|---|
| 07/17/2001<br>(Age 21) | **Defendant was operating a vehicle without a valid driver's license. Officers recovered 22 individual packs of heroin totaling .56 grams from the vehicle. Defendant failed to abide by standards of probation; a warrant issued. He had also tested positive for marijuana. He was placed under supervision.**<br><br>Possession of Drugs (F5), Preparation of Drugs for Sale (F5), Possession of Criminal Tools (F5)/ Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-01-412904; 7/11/2002: Sentenced to 1 year community control; 10/21/2002: Capias; 5/15/2003: Community Control extended to run concurrently with Docket No.: CR429396. |
| 9/16/2002<br>(Age 22) | **Defendant was in possession of 4.22 grams of PCP. He was in the presence of an individual wanted on a federal warrant for a parole violation.**<br><br>Possession of Drugs (F5)/ Cuyahoga County Common Pleas Court, Cleveland, OH; Docket No.: CR-02- 429396; 3/27/2003: Sentenced to 1 year community control to run concurrently with Docket No.: CR412904; 5/15/2003: Community control extended in Docket No.: CR412904 until March 27, 2004; 3/22/2004: Probation extended until December 31, 2004; 5/03/2004: Probation terminated as new charges were dismissed in Docket No.: CR442851. |
| 05/26/2003<br>(Age 22) | **A delivery of $80 worth of heroin was completed via a confidential informant. Defendant and three other individuals all possessed large amounts of currency. Heroin was located in the defendant's shoe.**<br><br>Trafficking in Heroin (F5)/ Lake County Common Pleas Court, Painesville, OH; Docket No.: 03CR000356; 5/25/2005: 11 months incarceration; 01/14/2006: Released and transferred to BOP to complete federal sentence. |

(Doc. 71, ¶¶ 55-58, 61, 66, 67.)

At age 24, Ligon was first charged in Federal Court on April 5, 2005 in Case No. 1:05CR 128. From November 2003 through March 1, 2005, Ligon and others were involved in a conspiracy to distribute heroin. In early 2004, the defendants became the focus of surveillance by local and federal law enforcement officers. There were a total of eight Overt Acts (OA) in the Conspiracy count. The defendant was involved in six OA. On March 1, 2005, surveillance was established at a residence in Cleveland, Ohio due to suspected drug activity. An individual was stopped upon exiting the residence in a vehicle. This individual was in possession of heroin, a grinder, and a large amount of United States currency. A search warrant was executed at the residence, where Defendant was present and detained. A search of the residence revealed heroin, marijuana, and two firearms. (Doc. 71, ¶ 68.)

Defendant was sentenced to 46 months incarceration and three years supervised release. Defendant violated his supervised release for failure to abide by the standard conditions. Specifically, he was non-compliant with drug testing, was admonished, and continued with his non-compliance with this condition of release. On September 7, 2010, several violations, including two law violations. On January 25, 2012, Ligon was sentenced to 24 months incarceration to run consecutively to Docket No.: 1:11CR12. (*Id.*)

On January 25, 2012, Ligon was convicted in federal case 1:11CR12 on counts of Conspiracy to Distribute Heroin and Conspiracy to Launder Money. From November 2009 through September 2010, Defendant and others were involved in a conspiracy to distribute heroin. From June 2010 through September 2010, Defendant and others conspired to conduct a series of financial transactions to conceal the location, source, ownership and control of the drug proceeds obtained during the conspiracy. (Doc. 71, ¶ 70.)

On the conspiracy to distribute conviction, Ligon was sentenced to 140 months incarceration and five years supervised release.   On the conspiracy to launder money conviction, he was sentenced to 120 months incarceration and three years supervised release. The sentences to were to be served concurrently and 24 months consecutive to Docket No.: 1:05CR128. Remarkably, on July 20, 2015, Defendant received an amended sentence of 100 months incarceration on both counts (to be served concurrently) and consecutive to 24 months in 1:05CR128.   He was admitted to Oriana House for pre-release on February 16, 2018, with an expected out date of May 9, 2020.   On April 22, 2019, he absconded and was arrested in the instant matter.   (*Id.*)

The Court notes with great concern that many of Ligon's offenses were committed while he was still on supervised release for previous offenses.   Indeed, he was still in federal custody when he committed the acts of which he was convicted in the instant matter, and again began negotiating a transaction to bring deadly opiates to this already-afflicted area.

In addition, the Court is deeply troubled by Ligon's behavior while in custody.   BOP records indicate that while in federal custody in Case No. 1:05CR128, Ligon violated a total of 25 institutional rules: a positive blood alcohol content of .041; violate visit regulations; unauthorized physical contact on two occasions; smoking in an unauthorized area on two occasions; four occasions of phone abuse; giving/accepting money; contraband; refusing to obey an order on two occasions; conducting a gambling pool; two occasions of unauthorized item; possession of gambling paraphernalia; possession of hazardous tool; verbal threat via phone to harm a community member; violation of conditions of community program; being in unauthorized area; third party call message passed; fighting; and use of drugs/alcohol.   His behavior demonstrates continued disrespect for the law, institutional authority, violence, and an inability to curtail his

drug-related behavior.

Given this detailed framework, it is clear to this Court that Ligon refuses to stop using, possessing, and distributing drugs, including heroin and fentanyl. In addition, it is clear to this Court that, despite multiple arrests and serving various sentences, Ligon refuses to cease engaging in other illegal activity as well. To be clear, nearly continually since January 1990, Ligon has either been in custody, on post release control, or the subject of an investigation – much of which is drug-related. Despite this lengthy history of arrests and incarceration, Ligon once again appears before this Court for sentencing on convictions of fentanyl-related activity and Escape.

C.   **Need for the Sentence Imposed**

In considering the need for an upward variance, the Court is mindful of a need to protect the public from Ligon's relentless criminal behavior. In that regard, the Sixth Circuit has noted that "district courts routinely focus on the harm defendants cause to the community." *United States v. Bunkley*, 732 Fed. App'x 388, 392–93 (6th Cir. 2018)(citing *United States v. Hodges*, 641 Fed. App'x 529, 532 (6th Cir. 2016). Moreover, the Circuit has also explained that it is permissible for the Court to rely on publicly available information when analyzing societal harm. *See United States v. Harris*, 585 Fed. App'x 893, 894-95 (6th Cir. 2014)(explaining that nothing in prior Sixth Circuit precedent prohibits district courts from properly considering publicly available statistics). Indeed, "courts routinely discuss societal conditions in this way[.]" *Bunkley*, 732 Fed. App'x at 393. Accordingly, in its explanation of the need to protect the public and the need for an upward variance, the Court relies upon publicly-available statistics.

It is widely known that Ohio suffers from an opioid epidemic. In 2017, Ohio had the second highest rate of drug overdose deaths involving opioids in the United States. There were

4,293 reported deaths — a rate of 39.2 deaths per 100,000 persons, compared to the average national rate of 14.6 deaths per 100,000 persons.   The greatest increase of deaths involved synthetic opioids other than methadone (predominantly fentanyl, the substance involved in this case) with a nearly twenty-fivefold increase from 139 deaths in 2012 to 3,523 deaths in 2017. *See* https://www.drugabuse.gov/opioid-summaries-by-state/ohio-opioid-summary/revised March 2019.   In 2018, 3,764 Ohioans died from unintentional drug overdoses, with illicit fentanyl involved in the majority of overdose deaths.   Https://odh.ohio.gov/wps/portal/gov/odh/media-center/odh-news-releases/odh-new-report-county-type-breakdown-2018-drug-overdose-deaths. Indeed, Ligon's own uncle died of a fentanyl overdose during his criminal course of conduct – a death which Ligon discussed with associates without a trace of compassion or remorse for his own actions.

It bears significant consideration that the victims of opioid overdose are not the only ones who suffer from this epidemic.   Children are suffering from the loss of parents and family members; foster cares are overwhelmed with the numbers of children who have been removed from their homes due to the crisis; correctional institutions are overcrowded with opiate offenders; hospitals are seeing alarming numbers of cases of infants born with opioid addiction – to name only a few of the devastating side-effects of rampant opioid use in this state.

For many years Ligon has been, and remains, an important cog in the machine that has fueled this drug epidemic.   He brought this deadly poison into his own community for nothing more than financial gain, and continuously ignores many of the effects that flow directly and indirectly from his actions.   In that vein, it is abundantly clear to the Court that a substantial sentence is necessary to protect the public from Ligon's continued actions.

Deterring the distribution of fentanyl into society serves to help protect the public from the

effects of opiates, including deaths and the other devastating ramifications of this crisis. Based upon the above, a significant sentence is needed for both general and specific deterrence. Distributors of opioids must come to understand that their sentences will not be light, particularly in light of this epidemic. Rather, if their actions continue to contribute to an ongoing epidemic – a fact undeniably true when evaluating the sale of opioids – a significant punishment must be utilized.

A significant sentence is also warranted to deter Ligon. As detailed above, prior encounters with the legal system have not deterred Ligon's conduct. Multiple state convictions, and even federal felony convictions in 2005 and 2011 did not deter Ligon from drug activity or other illegal activity. Despite those prison terms, including up to 100 months, Ligon returned to his criminal conduct. Nothing short of substantial period of incarceration will adequately deter his conduct and protect society from ongoing harm at the hands of this recalcitrant defendant.

### D.    Need to Avoid Unwarranted Sentencing Disparities

Finally, pursuant to 18 U.S.C. 3553(a)(6), this Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when considering the sentence to be imposed. According to the United States Sentencing Commission data compilations, the national average sentence for defendants with offenses involving Drug Trafficking with a Criminal History IV is 93 months. (Doc. 72.) Taking into account the detailed discussion above, including the nature of the instant offense, Defendant's criminal history, and the obvious need for a substantial sentence to protect the public and provide deterrence, the Court will sentence Ligon to a period of incarceration of 360 months, with 10 years supervised release. The 360 months is greater than the guideline range of 168 to 210 months, but within the statutory range permitted by the Section 851 enhancements of 300

months to life. The Court is cognizant that a sentence of incarceration for 360 months is just under four times higher than the national average for similar offenses, but the math alone does not necessarily make this sentence fall into the category of an unwarranted sentencing disparity when taking the entirety of the above discussion into account.

Understanding, of course, that "[f]or a sentence to the substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and the offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell,* 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)) (internal quotation marks omitted). A sentence is unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)).

When a district court imposes a sentence outside the advisory sentence guideline range specifically, the court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). In that vein, "the greater the district court's variance, the more compelling the evidence must be." *United States v. Stall*, 581 F.3d 276, 281 (6th Cir. 2009).

This Court believes that the 360 month sentence is substantively reasonable and sufficient, but not greater than necessary, and does not create an unwarranted sentencing disparity because Ligon has set himself apart from other offenders in his criminal category. Ligon's storied history with drugs and other illegal activity, including his institutional violations while custody, and his failure to abide by terms of supervised release, are not "problem[s] common to all" individuals

before this Court on charges involving drug trafficking activity. *See United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007). Ligon's personal characteristics, which certainly are not a problem common to all, give this Court pause. Ligon continues to engage in criminal activity, specifically possessing and selling drugs (including opiates), that puts himself and the public at risk, despite serving multiple sentences for the same or similar conduct. Ligon is an individual who refuses to be deterred from selling drugs. But deterrence is not the only issue. Ligon also continues to engage in behavior of the type that results in severe injury to society. The public must be protected.

It is this Court's belief that a sentence less than 360 months will not adequately deter Ligon, will not impress upon Ligon the need to respect the law, and will not properly protect the public from Ligon. The Court feels this is particularly true since Ligon has either been in custody or on post release control for drug-related offenses almost continually for the past decade, but steadfastly refuses to stop selling, possessing, and using drugs, or to stop engaging in other unlawful activity which ultimately puts the public at great risk.

Having considered Defendant's Supplemental Sentencing Memorandum (Doc. 74), the Court somewhat hesitantly declines to impose a life sentence. In so deciding, the Court considers that Defendant endured a difficult upbringing where he was exposed to violence and drugs. Nonetheless, the Court notes that many defendants who appear here have experienced difficult childhoods, but do not continue to disregard the law and the well-being of society to the extent Mr. Ligon has from a very young age.

For all of these reasons, the Court concludes that a 360 month sentence, followed by 10 years of supervised release, will not create an unwarranted sentencing disparity, and is sufficient, but not greater than necessary, under the circumstances present here.

**IV.**     **Conclusion**

For all of the reasons stated herein, the Court will impose a sentence of incarceration of

360 months, to be followed by 10 years of supervised release.   All other conditions of

sentencing were placed on the record during the continued sentencing hearing on March 3, 2020,

and will not be stated herein.


**IT IS SO ORDERED.**


**March 9, 2020**                                    **_s/John R. Adams**
**DATE**                                                    **JOHN R. ADAMS**
                                                              **UNITED STATES DISTRICT JUDGE**